### ALLIS and another vs. SABIN, impleaded &c.

A complaint for foreclosure prayed that the premises might be decreed to be sold "according to law." Defendant stipulated that judgment might be entered according to the "prayer of the complaint;" and judgment was entered in the usual form. At the time the complaint was filed and the judgment entered, three months' notice of a foreclosure sale was required, but subsequently the notice requisite for such a sale was reduced to six weeks. *Held,* that the stipulation did not make it necessary that the premises should be sold according to the law in force at its date.

A stipulation by a mortgagee, that no proceedings should be taken on the judgment of foreclosure to sell the mortgaged premises within one year from the date of the judgment, does not preclude the advertising, before the year expires, of a sale to be made after its expiration.

Where mortgaged premises brought $2000 at the foreclosure sale, an offer by a judgment creditor to bid $2400 if a resale were ordered, is not sufficient ground for setting aside the sale, or refusing to confirm it.

APPEAL from the Circuit Court for *Milwaukee* County.

This was an appeal by *Sabin*, the mortgagor, from an order confirming the sale of the mortgaged premises under a judgment of foreclosure. The mortgage was executed August 14, 1857. The complaint in the action was filed on the 23d of December, 1861, and prayed, among other things, "that said premises might be decreed to be sold according to law." On the 24th of May, 1862, *Sabin's* attorneys filed a stipulation withdrawing his answer in the cause, and consenting that the

plaintiffs should take judgment "pursuant to the prayer of the complaint." Judgment of foreclosure and sale in the usual form was rendered on the same day, and, on the 26th of May, the attorneys of the plaintiff filed a stipulation "that no proceedings should be taken on said judgment to sell said mortgaged property within one year from the date of the decree, provided said *Sabin* should, within a reasonable time (not exceeding two months), pay to the plaintiff's attorneys all the disbursements in said action, together with the taxed attorney's fee, $25." The sheriff's report of the sale shewed that the mortgaged premises were sold to one Christian Wahl for $2000, on the 3d of July, 1863, the notice of the sale having been published once in each week for six weeks successively immediately preceding the sale. After satisfying the judgment there was a surplus of $600.27, which was paid into court to abide its further order.

The mortgagor opposed the confirmation of the sale upon the affidavits of himself, S. Austin, and Peter Yates. His own affidavit stated that the land was struck off at the sale to one A. M. Neymann; that after the sale Neymann told the sheriff that he bid off the land for Christian Wahl; that said Wahl and Neymann and one Falkner were present at the sale, and were the principal bidders, and apparently were bidding against each other; but that the affiant had been informed and verily believed that there was collusion between said bidders to have the property bid off at the sale for less than its real value, and that there was an arrangement existing at the sale between said Wahl and Falkner to prevent persons from bidding, in order that the land might be bid off by either Wahl or Falkner at less than its value, and then be divided between them. The affidavit also stated that the affiant had been informed since the sale, that Wahl and Falkner had told sundry neighbors that they had purchased said land at a great bargain, and that there was an arrangement between them at and prior to the sale, by which the land was to

Allis et al  vs. Sabin, impleaded &c.

be divided between them, if it was struck off to either of them; that the affiant was informed and believed that the land would have brought several hundred dollars more at the sale if it had not been for the collusion between said bidders; that he could and would have procured the attendance at the sale of persons who would have bid more than $2000 for the land, if he had not been led to believe that there would be competition for it between Wahl and Falkner, both of whom, he knew, wanted it, and had at sundry times made offers for it, but in no instance had either of them offered less for it than $100 an acre.  2. The affidavit of S. Austin stated that he was a judgment creditor of *Sabin*, and attended the foreclosure sale for the purpose of bidding off the premises if they were sold for less than enough to pay all liens including his judgment, but did not bid because he was informed and believed at the time of the sale that $2000 would more than pay all incumbrances; that the premises were worth much more than $2000, and if a resale were ordered he would bid and pay $2,400 for them; that he believed there was collusion between the bidders at the sale, and that if it had not been for such collusion the premises would have brought a much larger sum. 3. The affidavit of Peter Yates stated that he knew well the value of the mortgaged premises, and that he considered them well worth $100 per acre.    The plaintiffs read the affidavit of A. M. Neymann, which denied that there was any collusion between the affiant and Wahl or any other person to prevent full competition at the sale, or that there was, to his knowledge, any arrangement between Wahl and any other person by which such competition was prevented or discouraged; or that there was in his belief any agreement by which any one was to forbear bidding freely and as high as he thought proper.    Similar affidavits of Wahl and Falkner were also read.

*Coon & Cotton*, for appellant:

1. Judgment having been entered in the foreclosure suit in pursuance of the sipulation, the premises could not be sold legally except in conformity with the law in force at the time the stipulation was made. See section 3, chap. 220, Laws of 1859. [This chapter required that mortgaged premises should be sold only upon three months' notice of the time and place of sale; but chap. 299, Laws of 1863, which took effect April 24th of that year, requires the notice of sale to be published for six weeks only before the sale.—REP.] 2. The affidavits show collusion between the bidders at the sale. 3. By the stipulation of May 26th, the plaintiffs were not to take any proceedings for a sale of the property within one year from the date of the judgment. On the 19th of May, 1863, the plaintiff advertised the premises for sale, contrary to the terms of the stipulation.

*Pitkin & Davis*, for respondent.

*By the Court*, COLE, J. We see no good ground for saying that the parties stipulated that the mortgaged premises should be sold according to chap. 220, Laws of 1859. Indeed, the only stipulation we find, made before judgment, is the one signed by the attorneys of the mortgagors, in which they agreed to withdraw the answer of Eben H. and Harriet C. Sabin, and consented that the plaintiffs should take judgment and decree pursuant to the prayer of the complaint. On the 26th of May, 1862, two days after the date of the judgment, the plaintiff's attorneys stipulated and agreed that no proceedings should be taken on the judgment to sell the mortgaged property within a year from the time the judgment was rendered, providing the defendant *Sabin*, within a reasonable time, not exceeding two months, paid the plaintiff's attorneys all disbursements in the action, and the taxed attorney's fee of $25. The case shows no violation of the spirit of this agreement.

It is further claimed that the affidavits read on hearing the application to confirm the sale show that there was collusion between the bidders at the mortgage sale.    This charge is not sustained by the evidence.    It is true *Sabin* states in his affidavit that three persons (whom he names) were present at the sale, and the principal bidders, and were apparently bidding against each other; but that he was advised and informed, and believed, that there was collusion between them to have the premises bid off at less than their real value, and that there was some arrangement between them to prevent bidding.    It is a little remarkable, if these parties were in collusion, and had entered into some arrangement to prevent bidding, that they should " apparently " be bidding against each other. Such a charge of fraud, even if it were uncontradicted, would not be entitled to very great consideration.    It is vague, indefinite and not very consistent with itself.    Austin, who was a subsequent judgment creditor, attended the sale to protect his interest, and he states, in the same general manner, that he was informed and believed that there was collusion between the bidders at the sale, and that, if it had not been for such collusion, the premises would have brought a much larger sum than two thousand dollars, the amount they were sold for. Austin, of course, was not a party to the alleged fraudulent agreement of the bidders.    He attended the sale, as he says, for the express purpose of bidding off the property if it should be sold at a sacrifice or for a sum not sufficient to pay all liens upon it prior to and including his judgment.    He did not however bid, because, he says, he was informed and believed the amount the premises sold for would be sufficient to pay all incumbrances, including his judgment.

In opposition to these general charges, the parties implicated deny, in the most positive and explicit manner, that there was any collusion between them to prevent competition at the sale, or any understanding or agreement to forbear to bid freely or

as high as each might think proper. But, without dwelling upon their affidavits, we will say that no case was made out for setting aside the sale on the ground of fraud or collusion on the part of the bidders.

The objection that the sale should be set aside on the ground of inadequacy of price, does not seem to be seriously relied on here. As already remarked, the property sold for two thousand dollars, and Austin says, if a resale should be ordered, he was ready and willing to bid the sum of twenty-four hundred dollars. This is the only offer made to raise the bid, and in no possible view could it be claimed to establish a case where a sale of mortgaged premises should be set aside on the ground of inadequacy of price.

We are of the opinion that the sale was properly confirmed, and the order of the circuit court confirming it is affirmed, with costs.